PARKS, Appellant, v. WATSON *et al.*, Respondents.

1. A., being the owner of two sections of land, by instrument dated in 1836 and recorded in 1837, sold and agreed to convey to B. an undivided one-fourth part thereof. The interest thus acquired passed to and became vested in C. by deed dated April 29, 1842, but not recorded until December 20, 1847. A., by deed dated in 1839 and recorded in 1841, conveyed said two sections to D. and E. subject to the rights of B.'s representatives under the above agreement. Under this deed to D. and E., C. became interested to the extent of an undivided fourth part of the interest thus acquired by said D. and E. In 1844, under an execution issued against C., the sheriff levied upon "all the right, title, interest and estate of the said C. in and to" the several tracts embraced in the deed from A. to D. and E., together with other tracts. In the levy and advertisement the tracts described in the deed from A. to D. and E. are designated by the numbers of the sections, township and range, after which there follows this further description: "Being the same property conveyed by A. to D. and E. by deed dated 28th of June, 1839, and recorded in book O, p. 351 and 352." The deed of the sheriff adopts the descriptions contained in the levy and advertisement, and conveys to the purchaser "all the right, title, interest and claim" of C. in and to said tracts so described. *Held*, that the purchaser, by this sheriff's deed, acquired title to that interest only which was vested in C. under the deed from A. to D. and E., and not to that held by him, at the date of the levy and sale, under the title acquired by B. from A.

## *Appeal from St. Charles Circuit Court.*

This was a suit in the nature of a bill in equity. All parties claim title to the land in controversy under Jamison Samuel, who entered, and obtained patents for, sections twenty-seven and twenty-eight, in township forty-eight, of range five east. Samuel, by an instrument dated January 11, 1836, and recorded June 6, 1837, "bargained and sold unto George Shannon, of, &c., one undivided fourth part of" said sections twenty-seven and twenty-eight. Said instrument, after more particularly describing said sections, proceeds as follows: "And the two sections constitute one body of land, one-fourth part of which I hereby promise and bind myself to convey by deed in fee simple to the said George Shannon, to be selected on any of the outer lines, the whole fourth to be in one body and in due proportion to the figure

of the whole plat of the whole body of land hereby entered. And I promise to make said conveyance whenever I receive patents for the same, or sooner, if said Shannon requires it. In witness whereof," &c. Shannon mortgaged the interest thus acquired to one Ayres, January 29, 1836. This mortgage was foreclosed, and at the sheriff's sale under the decree of the court Ayres became the purchaser. The sheriff's deed to him was acknowledged May 17, 1839, and recorded August 29, 1840. Ayres conveyed said interest to Elias T. Langham by deed dated April 29, 1842. This deed was recorded December 20, 1847. Langham, by deed dated August 4, 1848, and recorded the same day, conveyed the same to his daughter Wenona Langham. This was a voluntary conveyance. In March, 1856, the said Wenona and her husband conveyed said one-fourth interest to the plaintiff Robert H. Parks. The title thus acquired is that asserted in this suit.

Said Jamison Samuel, by deed dated June 28, 1839, and recorded June 21, 1841, conveyed to Angus W. McDonald and Kennedy Owens, among other tracts, the following: " Sections numbers twenty-seven and twenty-eight, in township forty-eight, of range five east, containing each six hundred and forty acres; these two sections to be subject nevertheless to the rights in law derived or derivable to the legal representatives of the late Judge Shannon under a certain instrument of writing executed by the said Jamison Samuel unto the said Judge George Shannon, deceased, in his lifetime." By instrument in writing, dated July 8, 1841, but not recorded, and executed by A. W. McDonald and Elias T. Langham, it was acknowledged and declared that said Langham was interested in said purchase equally with McDonald, and that his name ought to have been inserted as grantee in the deed from Samuel. On the 25th of April, 1843, McDonald recovered a judgment against Langham in the St. Louis court of common pleas. An execution was issued on this judgment to the sheriff of St. Charles county. Under this execution the sheriff levied upon "all the right,

title, interest, and estate of the said Elias T. Langham in and to" certain tracts of land, a portion of which are described in the sheriff's advertisement as follows: "1st, one section of land (No. 27) twenty-seven, in township number forty-eight (48), range five east, containing six hundred and forty acres; 2d, one section of land, number twenty-eight (No. 28), in township number forty-eight (48), range five east, containing six hundred and forty acres; [the advertisement proceeds to enumerate three other tracts;] being the same property conveyed by Jamison Samuel and wife to Angus W. McDonald and Kennedy Owens by deed dated 28th of June, A. D. 1839, and recorded in the recorder's office of St. Charles county, in book O, page 351 and 352." The sheriff's deed, which was acknowledged May 14, 1844, and recorded September 14, 1848, conveyed " all the right, title, interest and claim which the said Elias T. Langham had in and to said several tracts of land" to Angus W. McDonald, adopting the description contained in the advertisement. The defendant Watson claimed title by virtue of various conveyances from McDonald and Owens.

The plaintiff prayed that the court would " decree a fee simple title in the petitioner in and to the one-fourth part of said two sections of land, and have the same set off to him on one of the outer lines of the said two sections of land in one body, according to the aforesaid agreement of the said Jamison Samuel and George Shannon; and that the west half of section twenty-eight above described be set off and allotted to him, the said half section being one-fourth of the said two sections of land, and being in one body, and on one of the outer lines of said two sections of land, and in due proportion to the figure of the whole body of said two sections of land, and for such other and further relief," &c.

The plaintiff asked the court to " decide that no title to the land in controversy passed to Angus W. McDonald by virtue of the sheriff's deed of May 13, 1844, except such title as was conveyed to McDonald and Owens by the deed of Jamison Samuel of June 28, 1839." The court refused

so to " decide, but decided that said sheriff's deed conveyed to McDonald all the title to said land that said Langham had at the date of the levy of execution on said land, and at the time that the execution came to the hands of the sheriff of St. Charles, derived from any source whatever."

*Leonard, Wells* and *É. A. Lewis,* for appellant.

I. The words, in the sheriff's deed to McDonald, " being the same property conveyed by," &c., are restrictive of the general description before given. (5 Metc. 25 ; 6 Metc. 532 ; 5 N. H. 536 ; 7 N. H. 244 ; 5 N. H. 59 ; Greenl. Ev. § 286 ; 2 Phill. Ev. 718, 734 ; Glamorgan v. Lane, 9 Mo. 475 ; Broom's Legal Max. 273 ; 6 Conn. 722 ; Flagg v. Bean, 5 Foster, 49 ; 1 Dev. 242 ; 14 Penn. State, 29 ; 11 Barb. 174 ; 4 Mass. 205 ; 4 Foster, 54 ; 13 Maine, 430 ; 37 Maine, 63.)

*Glover & Richardson* and *Broadhead,* for respondents.

I. The court rightly refused the instructions asked. The legal effect of the sheriff's deed was to pass all Langham's interest in sections twenty-seven and twenty-eight. (5 Metc. 28 ; 4 Mass. 196 ; 2 Metc. 41 ; 6 Metc. 529 ; 36 Maine, 316 ; 31 Penn. State, 475 ; 2 Parsons on Contr. 59.)

NAPTON, Judge, delivered the opinion of the court.

The sheriff's deed, which we are called upon to interpret in this case, in pursuance of the words of the levy, advertisement and sale, conveyed " all the right, title and estate" of Langham in " sections twenty-seven and twenty-eight" (township and range being specified) and in several other pieces of land, all of them, including these sections, being enumerated in the deed from Samuel to Owens and McDonald, and proceeds with this further description : " Being the same property conveyed by Jamison Samuel and wife to Angus McDonald and Kennedy Owens, by deed dated 28th June, 1839, and recorded in recorder's office of St. Charles county, in book O, p. 351 and 352."

The deed from Samuel to McDonald and Owens, thus referred to, does not convey the entire sections twenty-seven

and twenty-eight, but only three quarters of them, excluding from its operation an undivided fourth of the two sections previously conveyed by the grantor to George Shannon. It appeared from another instrument of writing also on the record, that Langham was equally interested with McDonald in this purchase made from Samuel, and that it was through inadvertence or mistake that his name was omitted in the deed. These deeds showed that at the date of the sheriff's sale, heretofore adverted to, Langham had one-fourth of three-fourths of the two sections, deriving his title from the conveyance of Samuel to McDonald and Owens, referred to in the sheriff's deed.

Previously to the sale from Samuel, the original proprietor, to McDonald and Owens, as appears from the recitals in the deed to these persons, as well as by the instrument of writing itself by which it was effected, Samuel had conveyed to George Shannon a fourth part of these two sections, which " was to be selected on one of the outer lines of the entire tract, and was to be in one body and in due proportion to the figure of the whole body of the said land." This title, by conveyances and mortgages, had been, at the date of the sheriff's levy, *entirely vested in Langham*.

Langham was then, at the date of this sheriff's sale, the owner of *one-fourth* of these sections by a title derived from the deed of Samuel (the original proprietor) to Shannon, and of the fourth of the other three-fourths by conveyances based upon the deed from Samuel to McDonald and Owens.

The question in this case is whether the sheriff's deed conveyed both these interests, or only the interest which he held under a derivative title, based upon the deed to McDonald and Owens, particularly referred to in the sheriff's deed.

There is something on the face of the sheriff's deed as well as his levy and advertisement, which seems to convey the idea that Langham was not the owner of the entire sections twenty-seven and twenty-eight. No one, we think, could read the sheriff's advertisement and take up such an impression from its phraseology. It seems to be implied, by

the use of the words " all his right, title and interest," as well as by the diffuse or extended. description which follows, that he was not and did not pretend to be the owner of the entire tract of land indicated by sections twenty-seven and twenty-eight. It is clear that the sheriff did not so regard him, for, if he did, it is impossible to account for the unnecessary circumlocution employed by the sheriff to describe a thing at once so simple, plain and easy to be expressed.

This being the general impression conveyed by the sheriff's description, the question would naturally arise with those who proposed to bid or to buy, what is the interest which Langham has in these two sections, and which it is proposed by this advertisement to sell? The answer to that by the sheriff is, " being the same property conveyed by Jamison Samuel and wife to Angus McDonald and Kennedy Owens, by deed dated," &c. This deed shows that only three-fourths of the two sections were conveyed by it, and if Langham's title was based upon it, his interest could not exceed that proportion of the whole tract. This deed, it is true, does not use Langham's name, nor was it material that it should, for a reference to the public records, just as accessible as this deed, to which purchasers were referred, would show that Langham had one-half of McDonald's interest. The mere reference to the deed by the sheriff would be sufficient to advise any one that Langham's interest had its source in that title; for, if it had no connection with it, such a reference to it would be a mere absurdity, unless we adopt the suggestion that it was designed to be a more perfect description of sections twenty-seven and twenty-eight. This last suggestion is not entitled to much weight, and involves the extremely improbable supposition that the officer supposed he could, by any amount of circumlocution, make a description of a section of public land clearer than a simple enunciation of its number would make it. But the deed is evidently referred to for no such purpose, but to show the quantity of title he was selling and its origin.

In interpreting written instruments of every kind, courts

must resort and invariably have resorted to extrinsic circum-
stances. The situation and surroundings of the person
whose deed or will is under examination, and of the subject
matter affected by the paper, will necessarily enter into the
consideration of a court in determining the intent of the in-
strument. We must place ourselves in the condition of the
person writing to understand what he means and intends.
Hence cases upon the construction of written instruments
can not go far as precedents, and do not usually throw much
light upon other cases. A very minute circumstance or
expression will change the whole force of a paper, and each
case, after all, is settled by its own circumstances.

In reaching the conclusion, however, which we have done
in this case, we do not consider that it is unsupported by
authority. On the contrary, we think the weight of author-
ity sustains us, and we are not prepared to admit that any of
the decided cases necessarily conflict with the view we have
taken of the case. Some of the cases appear to conflict,
probably do conflict, but most of them are reconcilable, and
the apparent diversity grows out of really different circum-
stances, and a resort to different rules of interpretation.
Sometimes the general intent of an instrument is quite appa-
rent, and courts, in such cases, disregard details conflicting
with such general intent; sometimes one rule of interpreta-
tion is chiefly relied on, properly so in the case, whilst in
another, with equal propriety, another maxim is resorted to
for the purpose of elucidating the intent.

It is not proposed to review the authorities in detail; but
we refer to a few of them to illustrate our views.

The case of Sheppard v. Simpson, 1 Dev. 242, is very
much like this case in all its particulars. There the sheriff's
deed conveyed " *all the interest*" which the defendant in the
execution had to a certain tract of land, describing it, and
then the language of the deed is: " Being the land devised
to C. S. by his father D. S., and the undivided share of the
said C. S. in the lands of his deceased brother J. S." This
deed was held to pass only the interest derived by C. S. from

his father and his brother, although, at the date of the levy, advertisement and sale, the defendant in the execution owned the entire tract of land described by the will of his mother. The case is not distinguishable from the present, and some observations made by the judge who delivered the opinion of the court in that case may be transcribed as applicable to the present. " It is of great importance," said Judge Taylor, " to the public, that the land sold at a sheriff's sale should be so specified and defined that every person attending may know what price to bid, and to be under no doubt as to the land he is bidding for. If the whole of C.'s land passed under this deed, it would give an undue advantage to those bidders who were apprised of the true state of the title, and enable them to purchase the whole tract, while others were regulating their bids by the belief that nothing more than the land described by the sheriff was set up for sale."

The cases of Barnard v. Martin, 5 N. H. 534, and Allen v. Allen, 14 Maine, 387, are cases of voluntary conveyances, where general terms of description—as the word homestead, house, farm, &c.—are restricted by subsequent special boundaries. They are in accordance with the cases quoted from North Carolina.

The case of Northington v. Hillyer, 4 Mass. 205, is decided upon its own peculiar circumstances. It was a case in which the general intent of the grantor was most manifest, and the court would not permit an additional particular description, calculated to throw obscurity over the entire deed, to defeat the main purpose of the parties to it; and it was therefore rejected as false description. That was not a sale by an officer under judicial process; and, if it had been, it is not clear that the court would have come to the same conclusion. (Mason v. White, 11 Barb. 174.)

The cases of Wheeler, adm'r, v. Randall, 6 Metc. 532; Thatcher v. Howland, 2 Metc. 41; Elliott v. Thatcher (reported in a note to this last case), and Melvin v. Prop. Locks, &c., 5 Metc. 15, are cases in which the general intent of the deed to convey all the property first described is thought to

be so plain as to authorize and require the courts to disregard subsequent clauses apparently restricting the operation of the deeds. They are all based upon the maxim, *falsa demonstratio non nocet*. The case of Elliott v. Thatcher, like that of Northington v. Hillyer, is a case of plain mistake in the additional descriptive words used; and to give them their full force or make them restrictive would be against the plain general intent of the deed. These cases are entirely reconcilable with the decisions in North Carolina and New Hampshire, although the case of Melvin v. Prop. Locks, &c., 5 Metc. 15, may not be, and was at all events not so thought to be by the judges who decided it.

We proceed, in this case, upon a cardinal rule of interpretation, that effect is to be given to all the words of a written instrument. If the words are restrictive, then the grant will be restrained within the limits of the restrictive clause, if by so doing we can make it available. If the restrictive terms have nothing to operate on, they must be rejected as insensible. (Shepherd's Touch. 247.) We may believe, from the circumstances of the case, that if the sheriff had known of Langham's interest under Shannon he would undoubtedly have sold it, as well as that based upon the title under McDonald and Owens; but the question is, did the sheriff so intend, and did the bidder so understand it? Looking at the advertisement, what may we suppose the purchaser to have been buying? Langham's interest in sections twenty-seven and twenty-eight, undoubtedly; but what that interest was would be the next inquiry by the bidder, and the answer to that is to be found, as we think, in the reference made by the officer to the deed from Samuel to McDonald and Owens. This clause is not, as we understand it, cumulative, but restrictive, and can not be rejected as mere *falsa demonstratio*.

Judge Ewing concurring, judgment reversed and cause remanded. Judge Scott absent.